JOHN ROSS, APPELLANT, *v.* LUCRETIA TITTERTON AND WILLIAM TITTERTON, RESPONDENTS.

*Fraudulent representations — right to rescind contract on account of.*

This action was brought to foreclose a mortgage, given by the defendant to plaintiff's assignor, upon the purchase of the latter's interest in the stock and good-will of a drug store. The defendant claimed that the mortgage was invalid, on the ground that he was induced to make the purchase by the fraudulent representations of the mortgagee, as to the value of his interest in the business. It appeared that the defendant, after discovering the fraud, continued in possession of the property purchased, selling portions thereof, for six months, at the expiration of which time and before the commencement of this action, he offered to retransfer to the mortgagee his interest in the property and restore him to the possession thereof. *Held,* that the acts of the defendant in continuing in possession of the property and disposing of portions thereof, for the period of six months, after knowledge of the fraud, constituted a ratification of the purchase, and that the fraudulent representations of the vendor could not, therefore, be interposed as a defense to this action.

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action at a Special Term, in an action brought for the foreclosure of a mortgage.

*E. More,* for the appellants.

*W. Howard Wait,* for the respondents.

TALCOTT, J. :

This is an action to foreclose a mortgage, brought by the assignee thereof, and of the bond accompanying the same. The bond and

mortgage bear date on the 14th day of April, 1871, and were given to secure the payment of $7,464, with interest, at the expiration of one year from the date thereof. The bond and mortgage were executed to Marcus Rich, deceased, and were given to secure to him the unpaid part of the sum of $8,464, the purchase-money agreed to be paid by Titterton to said Rich, on the purchase by Titterton from said Rich, of the interest of said Rich in the "stock in trade, fixtures, furniture, effects, trade marks, labels, book accounts, bills payable, and good-will of business of the firm of Curtis & Rich," carrying on the wholesale and retail drug business on Greenwich street in the city of New York. The defense set up in the answer of the defendants is, false representations and fraud and deceit by Rich, in the negotiations between himself and Titterton, which resulted in the sale and purchase of the property. The misrepresentations alleged in the answer are various, but relate directly or indirectly to the amount of capital invested in the business, and as to whether the business theretofore conducted by Curtis & Rich had been profitable. The bill of sale of Rich's interest was executed to Titterton on the 14th day of April, 1871, and at that time he went into the possession of the property. The defense is founded on the claim of a rescission of the contract, upon the ground of the alleged fraud and misrepresentation. The action was tried before the court, and the justice has found that Titterton was induced to purchase Rich's interest in the business, " by means of the false and fraudulent representations made to him by said Rich, in respect to the property and character of said business set out in the answer, and that such representations were in respect to material matters, and were calculated to and did deceive the said William Titterton, and also calculated to and did influence him in making said purchase, and in procuring the execution and delivery of said bond and mortgage, and were so made by the said Rich, knowing their falsity, and for the purpose and with the intent of deceiving and of cheating and defrauding the defendants." This is the only specification of the particular fraud, or fraudulent representation, contained in the findings, but from a careful examination of the case, it would seem, that the representation mainly relied on by the justice, as the ground of this finding, must have

been a misrepresentation as to the value of the interest of Rich in the concern, depending principally on the amount of the property on hand, that is goods, fixtures, etc. It is earnestly insisted by the plaintiff, that no material fraud or false representation on the part of Rich is established. However, in the view which I take of the case, it should have been disposed of upon another ground, which renders a close analysis of the testimony, bearing upon the question of fraudulent representation, unnecessary. The representations relied upon as fraudulent, were in substance, as to the extent of, and value of the interest of Rich, in the business. And the falsity of these representations depended, as is claimed by the defendants, in great part, on the amount and value of the stock and fixtures. A preliminary contract for the sale and purchase was made on the fourth of March; and between that time and the consummation of the transaction, on the fourteenth of April, the defendant Titterton had spent a large portion of the time at the store of Curtis & Rich, overlooking the business, with full access to the books, and had taken an inventory of the stock on hand, but without naming the prices, which it was understood were to be fixed at the cost-price. The statement of Titterton on the subject is: "The inventory was taken before I went into possession, but not completed, that is to say, the prices were not arrived at." Neither Titterton nor Rich was a practical druggist; and it appears, from Titterton's testimony, that the inventory, was left to be completed, by the addition of the prices and estimated quantities, by Curtis, who was relied on as a person of knowledge and experience in the drug business. This inventory was finished by the addition of prices and quantities on the 1st of July, 1871. Upon the execution of the bill of sale, Titterton went into possession of the property, and continued the business in conjunction with Curtis; selling the goods, and purchasing to some extent, though to what extent does not appear, until about the 1st of April, 1872, when their fixtures were sold out on a chattel mortgage, subject to which Titterton purchased; and the remaining stock of goods on a judgment, by whom, or on what account obtained, does not appear. During the period from the fourteenth of April to and including the first of July, when the inventory was completed by the addition of the prices and

quantities, Titterton learned all the material facts concerning the representations, which he claims to have been fraudulent. He, however, in conjunction with Curtis, continued to sell and dispose of the goods, and collect the outstanding debts; and no account is given of the proceeds received in the business, though it appears that the sales were largely diminished after Titterton took the place of Rich in the firm. It is well settled, that a party who seeks to rescind a contract on the ground of fraud, must make his election to do so promptly, and, except under special circumstances, must be in a position to restore to the other party all that has been received, and must do so, or offer to do it. The finding in this case is, "that the defendant, before the commencement of this action, offered to said Rich to retransfer to him his interest in the said business, and tendered to him a retransfer thereof, accompanied with an offer to restore to him the possession of his said interest, and demanded of him a surrender of said bond and mortgage, and the execution of a satisfaction-piece of the said mortgage, which said Rich refused to make or execute." All the evidence on this subject is to be found in a stipulation at the close of the case, which only states the tender to have been made before the commencement of this action. The action, as appears from the date of the summons, was commenced on the 1st day of February, in the year 1872. The finding and the evidence in support thereof only established an attempt to rescind as late as the last day of January, 1872. So that, assuming that Titterton did not discover the discrepancy between the representations and the value of Rich's interest until July, 1871, he omitted, so far as the case shows, to make any election to rescind the contract, for six months after a full discovery of the falsity, of what are now claimed to have been the fraudulent representations; and, moreover, continued in the mean time, to carry on the business and sell and dispose of the property. Thus voluntarily putting it out of his power, to restore Rich to the *statu quo* at the time of the purchase. These facts, I think, present a sufficient reason, for denying the right of Titterton to rescind the contract, upon the settled principles of law applicable to such cases. That the rescission of a contract on the ground of fraud must be prompt, as soon as the party has had a reasonable opportunity to discover the fraud, is so often repeated in the adju-

dications that any reference to particular cases on this subject is unnecessary. It is also well settled, that in order to a rescission, the party rescinding must be able, and at least offer to restore the other party to the same situation in which he was before. In the case of *Curtiss* v. *Howell* (39 N. Y., 211), where the purchaser of bark, to be delivered at a certain rate per year for a series of years, to be used in the purchaser's tannery, had received a portion of the bark, which he had consumed in his tannery, but which had been paid for under the contract as delivered, it was held that he could not rescind, the court saying: "It is no answer, to say that he could not because the bark had been consumed. If this was so, the right of rescission no longer exists, for this is a right that can only be exercised by restoring all that has been received; and when the power to do this ceases, the right is also at an end. In *Cobb* v. *Hatfield* (46 N. Y., 533), the court says: "In order to rescind a contract on the ground of fraud, there must not only be a disaffirmance at the earliest practicable moment after the discovery, but a return of all that has been received under it, and a restoration of the other party to the condition in which he stood before the contract was made. * * * The taking of any benefit under the contract after knowledge of the fraud, or changing the condition of the property, the subject-matter of the contract, is a ratification of it." So, in the case of *Pullman* v. *Alley* (53 N. Y., 637), where the question was of the right to rescind the purchase of a stock in trade on the ground of fraud, it was held, that as the evidence showed, that the vendee before offering to rescind, had sold most of the stock purchased, and had sublet the premises, and so was not in a condition to restore the vendors substantially to the situation occupied by them before the sale, he could not rescind, but must seek his remedy in damages. It appears, in this case, that the vendee, who seeks to rescind the contract, continued in the possession of the property, selling and disposing of the same, not only from the time of the purchase, but for about six months after full discovery of whatever fraud may have been practiced upon him by the vendor. During this time the sales fell off, and the business was less valuable and remunerative than it had been for the year preceding the purchase, until, soon after the commencement of the suit, all the tangible property

of the concern was seized and sold upon the chattel mortgage, and upon a judgment. At the time of the attempted rescission, no account was given as to the proceeds of the sales of the property, or of the amounts collected on the debts due. The property could not be restored, and no offer was made to account for the proceeds; and it is evident that, in the hands of Curtis & Titterton, the business had diminished; that the good-will, which, it is evident, was looked upon as an important item in the sale, and which, it is admitted in the answer, was the chief inducement to the purchase rather than the intrinsic value of the stock of goods, must have been rendered nearly, if not altogether valueless. The defense is set up against an assignee of the mortgage, who, so far as appears, had nothing to do with the transaction as to which fraud is alleged, and as to whose title, aside from the alleged fraud in the transaction between the original parties, no impeachment appears in the evidence. He has the right to appeal to the most rigid and technical rules in answer to the defense; and, we think, for the reason stated, that, so far as appears from the case, the right to rescind at the time and in the manner in which the rescission was attempted, did not exist. But the vendee must be left to his remedy, sounding in damages. New trial granted, costs to abide the event.

Present — BARNARD, P. J., TAPPEN and TALCOTT, JJ.

Judgment reversed on questions of law and fact, and new trial granted, costs to abide event.